IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

| | |
|---|---|
| LINDSAY A. MCCORMACK,<br><br>                 Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                 Defendant. | CIVIL ACTION NO.: 5:22-CV-223<br>(JUDGE BAILEY) |

## REPORT AND RECOMMENDATION

This case arises from the denial of Plaintiff Lindsay A. McCormack's ("Plaintiff") Title II application for period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of the Commissioner's decision.

Because the Commissioner's final decision to deny Plaintiff's claim for DIB contains legal errors which frustrate the ability for meaningful review and prove not to be harmless, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge recommending the Plaintiff's Motion for Summary Judgment [ECF No. 7] be **GRANTED**, the Defendant's Motion for Summary Judgment [ECF No. 12] be **DENIED**, the Commissioner's decision be **REVERSED** and that this case be **REMANDED** for further reconsideration.

# I. PROCEDURAL HISTORY

On February 19, 2020, Plaintiff filed her application under the Social Security Act for DIB, alleging disability that began on July 28, 2014. (R. 151, 314-315.) This claim was initially denied on September 29, 2020, and, again, upon reconsideration on November 23, 2020. (R. 161, 217). Plaintiff, her then-counsel, and a vocational expert, Paul Anderson Ed.D., then appeared before an ALJ for an online video hearing on December 7, 2021. (R. 166-190).

On January 7, 2022, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Act. (R. 148-165).

Plaintiff filed a request for review of the ALJ's decision. (R. 355-362). Subsequently, on July 29, 2022, the Appeals Council issued a Notice denying Plaintiff's request for review with no substantive explanation. (R. 1-4). Plaintiff filed her Complaint with this Court on September 13, 2022. [ECF No. 1]. The Commissioner filed their Answer and Administrative Record on December 2, 2022. [ECF Nos. 4, 5].

On January 9, 2023, Plaintiff Lindsay A. McCormack ("Plaintiff") filed her Motion for Summary Judgment [ECF No. 7], and Memorandum in Support of Her Motion for Summary Judgment, [ECF No. 8]. In the Motion, Plaintiff argues that remand is required because the ALJ failed to evaluate a medical opinion of record – primarily, the opinion of Dr. Kevin Cox, M.D. [ECF No. 8 at 3-6], who, after a September 23, 2020, consultative exam, found "obviously severe optic nerve damage with moderate visual field loss" and "[s]leep apnea may be exacerbating nerve damage." [ECF No. 8 at 3 (citing R. 1429)].

Plaintiff further argues in her Motion that remand is required because the ALJ and the Appeals Council had no legal authority to adjudicate the case because they were not properly appointed as Acting Commission Berryhill had no legal authority to act or make such appointments after November 16, 2017. [ECF No. 8 at 6-7].

2

On February 8, 2023, Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Defendant" or "Commissioner") filed her Brief in Support of Her Motion for Summary Judgment. [ECF No. 12]. In her Brief, Defendant argues the medical opinion at issue, Dr. Cox's 2020 Report, is "irrelevant," [ECF No. 12 at 7], because it does not relate back to 2019 and the primary question of whether Plaintiff was disabled on or before December 31, 2019.

Defendant further argues that there is substantial evidence supporting the ALJ's determination that "on or prior to December 31, 2019, Plaintiff did not experience disabling vision loss and that a report from nine months after this date did not change this fact." [ECF No. 12 at 8-9]. Defendant argues the Federal Vacancies Reform Act permitted Berryhill's service pending the nomination and ratification of Andrew Saul as Acting Commissioner. [ECF No. 12 at 10]. Defendant further argues that Plaintiff is not entitled to remand under the *de facto* office doctrine and other prudential considerations. [ECF No. 12 at 18-20].

On April 5, 2023, the undersigned U.S. Magistrate Judge heard oral arguments in this matter. [ECF Nos. 9, 15]. Plaintiff appeared by and through counsel Robert W. Gillikin, II; Andrew C. Lynch appeared on behalf of the Commissioner. [ECF No. 15].

The undersigned commenced oral arguments on three issues: (1) whether the ALJ erred in failing to evaluate the opinion of consultative examiner Dr. Cox (particularly where that report directly contradicted the ALJ's findings, but where the same report was made after Plaintiff's insured status expired); (2) whether the ALJ impermissibly relied on his lay judgment to interpret Dr. Cox's medical findings and Plaintiff's visual field loss; and (3) whether remand is required because the ALJ and/or the Appeals Council Judges were without legal authority to adjudicate this case because they were not properly appointed.

**A. Visual Field**

At oral argument, Plaintiff's counsel asserted that Dr. Cox's medical opinion considered both visual acuity and visual field, distinctly different impairments, or criteria according to the Agency,[1] and that the ALJ erred by only considering Plaintiff's visual acuity and failing to properly consider Plaintiff's other visual field impairments as evaluated by Dr. Cox. [2:01:01-2:03:44].[2] Plaintiff's counsel explained on the record, that the ALJ discounted Dr. Cox's medical opinion by stating that the exam findings revealed "no significant visual acuity loss." [2:03:45-2:04:17 (citing R. 156)].

Plaintiff's counsel concedes that, with visual corrections, there is no visual acuity loss for Plaintiff; however, counsel pointed the Court to the latter portion of Dr. Cox's opinion which finds that Plaintiff has "obviously severe optic nerve damage with moderate visual field loss," (R. 1439), and suggests that the ALJ erred by failing to consider Dr. Cox's opinion regarding the visual field loss. [2:04:18-2:05:20; 2:05:50-2:06:07]. Plaintiff's position is that the ALJ's failure to properly consider and evaluate Plaintiff's visual field loss is an error which requires remand. Plaintiff counsel argued her past relevant work as a cashier, in addition to the alternative listings work, requires up to a frequent level of the ability to see, and Plaintiff's noted visual field loss and any corresponding visual limitations would need to be contemplated for the purposes of the ALJ's RFC, and the ALJ failed to do so in this opinion. [2:06:08-2:07:19].

---

[1] *See generally* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, ¶ 2.00 (A)(1) ("Visual disorders are abnormalities of the eye, the optic nerve, the optic tracts, or the brain that may cause a loss of visual acuity or visual fields. A loss of visual acuity limits your ability to distinguish detail, read, or do fine work. A loss of visual fields limits your ability to perceive visual stimuli in the peripheral extent of vision."); *see also Bailey v. Berryhill*, 2017 WL 3834990, at *11 (S.D.W.Va., 2017) ("Under the Listings, there are three impairments pertinent to eyesight. Listing 2.02 involves a loss of central visual acuity. Listing 2.03 addresses loss (contraction) of the visual field. Listing 2.04 considers the loss of visual efficiency, which is a formulaic determination that uses calculations of visual acuity efficiency and visual field efficiency.")

[2] The citations here in brackets and throughout this Report and Recommendation correspond to the times of the Court's archived audio recording of the oral arguments on April 5, 2023, which is located on the section of the Court's intranet site for FTR recordings. *See* Tape #522cv223 040523 mja.

To summarize, as to the visual impairments, Plaintiff's position is that the ALJ's opinion is erroneously bereft, and the ALJ failed by not considering or addressing the "obviously severe optic nerve damage with moderate visual field loss" in Dr. Cox's medical opinion, as purportedly is required by the Agency's regulations. The only way to remedy this error, according to Plaintiff's counsel, would be to remand for reconsideration so the visual field loss could be fully considered and related limitations could be incorporated into an ALJ's RFC. [2:07:20-2:08:39].

Counsel for the Commissioner argued, in response, that a visual field is not required for the jobs considered for Plaintiff in the ALJ's opinion. Counsel for the Commissioner asserts that for Plaintiff's past relevant work as a cashier[3] (R. 159), or for alternative work suggested by the ALJ as a ticket taker,[4] information clerk,[5] or bakery worker,[6] for "field of vision," the Dictionary of Occupational Titles ("DICOT") states – "Not Present - Activity or condition does not exist." Thus, counsel argued that even if an ALJ did properly narrow the RFC to accommodate severe visual field loss, all the listed employment options would still be included as positions Plaintiff could perform. [2:16:42-2:21:03]. In other words, the error, if any, is a harmless one, and remand would be futile. [2:26:17-2:29:28; 2:38:41-2:40:12 (citing McKee v. Comm'r Soc. Sec., No. 20-3407, 2021 WL 4259154, at *1 (3d Cir. Sept. 20, 2021))].

Regarding the timing of Dr. Cox's opinion, counsel for the Commissioner explained that because this is a Title II DIB claim, there is a limited time frame for consideration, and, here, Dr. Cox's opinion needn't be considered because he did not use language in the opinion which related back to the relevant DIB period. [2:21:04-2:22:31]. Counsel for the Commissioner pointed to other

---

[3] Cashier II, DICOT 211.462-010; 1991 WL 671840.
[4] Ticket Taker, DICOT 344.667-010;1991 WL 672863.
[5] Info Clerk, Representative, Personal Service, DICOT 236.252-010; 1991 WL 672178.
[6] Bakery Worker, Conveyor Line, DICOT 524.687-022, 1991 WL 674401.

evidence, including the function report, (R. 340, 342), which supports the ALJ's opinion. [2:22:32-2:26:16].

In reply, Plaintiff's counsel informed the Court that Dr. Cox's consultative examination and subsequent medical opinion were, in fact, ordered by the government agency itself and suggested it is paradoxical for the Commissioner to argue that the opinion was relevant enough to order and pay for but irrelevant for the ALJ's viewing. [2:12:31-2:15:19 (citing R. 1428 – "Request Made by West Virginia Social Security Disability Section")]. Plaintiff's counsel further asserted this is not harmless error because under the Agency's own Regulation 2.00, Subsection (A)(2)(B), if an individual's visual field is less than 20 degrees, the individual may be considered legally blind, and that should have been considered, alongside Dr. Cox's opinion, by the vocational expert ("VE"), and the ALJ in this case. [2:32:12-2:38:40].

### B. Lay Judgment

Regarding the argument the ALJ impermissibly relied upon his own lay judgment, Plaintiff's counsel argued that the ALJ substituted his own judgment by reviewing the list of daily activities and deciding that Plaintiff did not have any visual field problems – this is particularly the case, counsel argues, when discussing visual field, which requires a higher medical understanding, than visual acuity. [2:08:41-2:10:48 (R. 156-157)]. Plaintiff's counsel noted that Dr. Cox's medical opinion can be found in the record (R. 1429-31), and includes ophthalmological charts and results which might require more than the average skills of a layperson, or even an ALJ, to read and review for purposes of an RFC. [2:10:49-2:12:06].

### C. Constitutional Arguments

Regarding the constitutional arguments raised in Plaintiff's brief, Plaintiff stated on the record that these issues have been resolved by the United States Court of Appeals for the Eighth

6

Circuit. Accordingly, after discussing the matter with counsel for the Commissioner, Plaintiff's counsel stated she will be withdrawing all arguments related to whether the ALJ and/or the Appeals Council Judges were without legal authority to adjudicate this case. [2:12:07-2:12:31]. Due to this consent and concession, there is no need for an analysis of the constitutional arguments previously presented in the parties' written briefs.

The matter is now before the undersigned for a Report and Recommendation to the District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions, oral arguments, and the administrative record, the undersigned now issues the following Report and Recommendation.

## II. FACTUAL BACKGROUND

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. [ECF No. 6]. The undersigned relies upon those stipulated facts[7] throughout this report and recommendation but, for the sake of completeness, after considering the record in full, the undersigned will highlight select relevant facts below.

Plaintiff Lindsay A. McCormack was born on July 15, 1989, making her thirty-three years old, or a younger individual,[8] at the time the ALJ issued his opinion. (R. 314). McCormack is a high school graduate (R. 172), who previously worked in Human Resources and as a cashier. (R. 200.) July 28, 2014 is the alleged date that Plaintiff McCormack's disability began and the date she stopped working. (R. 314; 327). Plaintiff reported to the Agency she was unable to work due to her "inability to look at a computer or register screen, inability to bend down, a need to take

---

[7] *See* Pl. Brief Supp. Memo Summ. Judgmt. [ECF No. 8 at 2-3]; Def.'s Brief Supp. Mot. Summ. J. ECF No. 12, at 1-3.
[8] See 20 C.F.R. § 404.1563(c).

7

breaks due to asthma, light sensitivity, blurry and double vision, severe migraines, and an inability to concentrate." Pl. Brief Supp. Memo Summ. Judgmt., [ECF No. 8 at 2 (citing R. 363)].

On September 23, 2020, at 3:00 PM, Dr. Kevin Cox, MD, PC, performed a consultative examination on then-claimant, now-Plaintiff McCormack for her allegations of pseudo tumor cerebri, asthma, anxiety, and depression. Dr. Cox wrote that Patient's History included both "blurring of vision" and "flashes" in both eyes in 2009. (R. 1429). Regarding McCormack's visual acuity, Cox noted that without correction, distant visual acuity was 20/100-2 in both eyes, and with correction, visual acuity was 20/20. Id. Regarding funduscopic description, Dr. Cox noted "dilated tortuous venules," as well as "thin nerve fiber layer" in both eyes. Id. Dr. Cox opined the thin nerve fiber layer "may be mild papilledema." Id. Dr. Cox noted normal pupillary responses and slit lamp findings from McCormack. Id. Regarding his diagnosis and other opinions, Dr. Cox noted McCormack has pseudotumor cerebri and explained she has "obviously serve optic nerve damage with moderate visual field loss, sleep apnea [as well as hypertension] may be exacerbating nerve damage[.]" Id. *See also* Single Field Analysis, Eye Left, (R. 1430); Eye Right, (R. 1431); Vendor Code and Fax to WV State SSA Agency, (R. 1432).

### III. THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4); 416.920.

If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## IV. ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that, Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019, and Plaintiff did not engage in substantial gainful activity during the period from her potential onset date of September 1, 2018, through her date last insured of December 31, 2019 (20 C.F.R. § 404.1571 *et seq*.). (R. 154).

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: pseudotumor cerebri; asthma; gastroesophageal reflux disease; morbid obesity; and obstructive sleep apnea (20 C.F.R. § 404.1520(c)). (*Id.*)

At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. (R. 154-55).

At step four, the ALJ determined that Plaintiff's RFC as follows:

> To perform light work as defined in 20 C.F.R. § 404.1567(b) except: no climbing ladders, ropes, or scaffolds and limited to occasional other postural movements (i.e., climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling); must avoid concentrated exposure to extreme cold, extreme heat, and pulmonary irritants such as fumes, odors, dusts, and gases; and must avoid all hazards such as unprotected heights or dangerous unshielded moving mechanical parts.

(R. 155).

Finally, the ALJ determined that Plaintiff has past relevant work as a cashier and is capable of performing that work. (R. 159). The ALJ also provided that, "to the extent to which [Plaintiff's] limitations erode the unskilled light occupational base, through the date last insured, . . . [t]he vocational expert testified that given all these factors the individual would have been able to perform the requirements of representative occupations such as" ticket taker, information clerk, or baker worker, and those occupations exist in significant numbers in the national economy. (R. 160). Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Act. (R. 160).

## V. **DISCUSSION**

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual

findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. See generally Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

### B. Analysis

#### i. The ALJ erred by failing to assess and consider the visual field impairment.

Regarding Plaintiff's alleged pseudotumor cerebri and visual disorders, the ALJ wrote the following his opinion:

> The claimant has a remote history of a pseudotumor cerebri in 2009. . . . As of December 2019, the claimant's vision remained stable, and she denied headaches. As of January 2020, the month after the date last insured, her vision was stable. She denied blurry or double vision at that time (Exhibit 1F/14). In September 2020, which is well after her date last insured, the claimant underwent an ophthalmological consultative examination revealed (sic) no significant visual

> acuity loss. Her best corrected vision for distance and near was 20/20 in both eyes (Exhibit 4F/1). Based on the foregoing, it does not appear that the claimant had any significant visual limitations prior to her date last insured.

R. 156.

"Visual disorders are abnormalities of the eye, the optic nerve, the optic tracts, or the brain that may cause a loss of visual acuity or visual fields. A loss of visual acuity limits your ability to distinguish detail, read, or do fine work. A loss of visual fields limits your ability to perceive visual stimuli in the peripheral extent of vision." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.00A.1, 102.00A.1. "[T]he term 'blindness' means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. An eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered for purposes of this paragraph as having a central visual acuity of 20/200 or less." 42 U.S.C. § 416(i)(1). See also Myers v. Colvin, 2016 WL 1259073, at *5 (W.D.N.C., 2016). "Other visual impairments can form the basis of a finding of 'disabled', but only those meeting the statutory definition carry with them the special provisions applicable to being 'statutorily blind.'" § 24:4. Blindness, 3 Soc. Sec. Disab. Claims Prac. & Proc. § 24:4 (2nd ed.) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.00A.2.c., 102.00A.2.c., §§ 404.1581, 416.981, 416.985); *See also* Listings 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.02, 102.02A, 102.02B and 2.03A., 102.3A.

In a recent, comparable case, Bailey v. Berryhill, No. 2:16-CV-07044, 2017 WL, 3834990 (S.D.W.Va. July 6, 2017), report and recommendation adopted, No 2:16-CV-07044, 2017 WL 3727228 (S.D.W.Va. Aug. 29, 2017), the United States District Court for the Southern District of West Virginia explained, an "ALJ improperly conflated two distinct visual impairments: loss of visual acuity and loss of visual field. As a result, the ALJ erred by failing to perform an adequate

12

analysis of the evidence pertaining to Claimant's visual field loss." Id. "Given the unresolved contradictory evidence regarding the severity and functional impact of Claimant's visual field loss," the Southern District found "that the Commissioner's decision is not supported by substantial evidence. Thus, the case should be remanded for further assessment of Claimant's visual limitations." Id.

The Southern District also clarified that *post-hoc* explanations by the Commissioner were insufficient where an ALJ failed to perform a substantive analysis, particularly if that ALJ conflated visual acuity and visual field:

> In her brief in support of the disability decision, the Commissioner provides a thorough, well analyzed, and well-written review of the evidence regarding Claimant's loss of visual fields. Unfortunately, the Commissioner's brief is the first time that such an analysis was performed. A "simple but fundamental rule of administrative law. . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 169 (1962). The ALJ simply did not articulate any substantive analysis of Claimant's visual field loss. Moreover, when the ALJ referenced evidence related to Claimant's visual fields, he appeared to believe the evidence was relevant to Claimant's visual acuity. Indeed, if the ALJ understood the difference between the two impairments, that understanding was not made clear in the written decision. Consequently, the court cannot accept from the Commissioner an explanation for the disability determination that was not offered at any point in the administrative proceedings.

Bailey, 2017 WL 3834990, at *11.

Again, the matter was remanded for further administrative proceedings. Id.

The circumstances here likewise require remand. Evidence from consultative examiner Dr. Cox reflects that Plaintiff McCormack had "moderate field loss," despite normal visual acuity. (R. 1429). The ALJ did not perform an analysis pertaining to the severity or functional impact of Plaintiff's alleged visual field loss on her ability to work. (R. 154-156). Like in Bailey, the ALJ's

13

discussion only relates to evidence regarding Plaintiff's visual acuity, which impermissibly conflates the two areas of ophthalmological review that are distinct impairments under the agency's regulations.[9] Compare R. 154-156 (referring to "distance," "20/20" and "visual acuity") and 20 C.F.R. § Pt. 404, Subpt. P, App. 1, ¶ 2.00 (A)(1) *et seq*.

Counsel for the Commissioner urges that the information the ALJ cited about daily activities should be construed broadly, *post-hoc*, to find that the ALJ did somehow consider Plaintiff's visual field, off-paper, in such a way that there is substantial evidence to support the ALJ's opinion. However, upon review, the undersigned should not be left to "guess about how the ALJ arrived at his conclusions on Plaintiff's ability to perform relevant functions." Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). The ALJ's failure to distinguish between visual field and visual acuity as set forth in the agency's regulations, and to assess them accordingly in his opinion, considering Dr. Cox's opinion, leaves unresolved contradictory evidence which requires remand for further assessment and administrative proceedings.

Because of the unresolved contradictory evidence regarding the severity and functional impact of Plaintiff's visual field loss, the undersigned U.S. Magistrate Judge **FINDS** that the Commissioner's decision is not supported by substantial evidence. Therefore the undersigned **RECOMMENDS** that the case be remanded for further assessment of claimant's visual limitations.

### ii. The ALJ's error of law cannot be found to be harmless.

"In this circuit, where there is factual support that a listing could be met, the ALJ must consider whether the claimant's impairment meets or equals the relevant listing." Bailey, 2017 WL 3834990, at *10 (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986) (internal quotations

---

[9] *See infra* n. 1.

omitted). "The ALJ's analysis must reflect a comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing." Id. (quoting Huntington v. Apfel, 101 F.Supp.2d. 390-391 (D. Md. 2000)). When "a fair amount of evidence exists" that a claimant meets a disability listing, but the evidence is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Coe v. Berryhill, No. 1:15CV1077, 2017 WL 886858, at *3 (M.D.N.C. Mar. 6, 2017) (quoting Bailey v. Colvin, No. 1:14CV303, 2015 WL 5227646, at *3 (M.D.N.C. Sept. 8, 2015)).

Here, like Bailey, "[w]ithout an adequate review of the relevant evidence and an explanation as to how the ALJ determined the severity of Claimant's visual field loss," the Court cannot make findings about whether the "the decision is supported by substantial evidence." *Bailey*, 2017 WL 3834990, at *11. See also Radford v. Colvin, 734 F.3d 288, 295 (C.A.4 (N.C.) (2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling.").

As discussed above, Plaintiff alleged disability, in part, because of pseudotumor cerebri, and Dr. Cox's state agency consultative exam of record revealed "obviously serve optic nerve damage with moderate visual field loss" and "sleep apnea [as well as hypertension] may be exacerbating nerve damage[.]" (R. 1429). See also Single Field Analysis, Eye Left, (R. 1430); Eye Right, (R. 1431); Vendor Code and Fax to WV State SSA Agency, (R. 1432). Regarding visual field, the ALJ did not provide a "comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing.'" Bailey, 2017 WL 3834990, at *10. (quoting Huntington,

15

101 F.Supp.2d. at 390-391. Furthermore, evidence regarding Plaintiff's visual eye disorders was rejected without substantive discussion, making it "impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Coe, 2017 WL 886858, at *3 (quoting Bailey v. Colvin, No. 1:14CV303, 2015 WL 5227646, at *3 (M.D.N.C. Sept. 8, 2015)).

The undersigned cannot find the ALJ's failure to assess visual field harmless, where this Court may later be left "guess about how the ALJ arrived at his conclusions on Plaintiff's ability to perform relevant functions." Mascio, 780 F.3d at 637. See also Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017)("[T]he dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable."). Finding errors in the ALJ's legal analysis preventing this Court from engaging in meaningful, substantial evidence review, the undersigned finds the ALJ's errors were not harmless and respectfully **RECOMMENDS REMAND** for further administrative proceedings.

## VI. RECOMMENDATION

For the reasons articulated above, the undersigned recommends Plaintiff's Motion for Summary Judgment be **GRANTED,** [ECF No. 7], Defendant's Motion for Summary Judgment be **DENIED**, [ECF No. 12], and this matter be **REVERSED and REMANDED for reconsideration.** Specifically, the undersigned recommends that upon remand, the ALJ perform an assessment of Plaintiff's visual disorders as well as the required RFC assessment as to Plaintiff's capacity to perform relevant work functions considering any relevant visual disorders and a reassessment regarding the finding of disability.

The parties shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge.

Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide an authenticated copy of this Report and Recommendation to counsel of record.

Additionally, as this Report and Recommendation concludes the referral from the District Court, the Clerk is further **DIRECTED** to terminate the magistrate judge's association with this case.

Respectfully submitted this July 6, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE